UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHELDON HARRIS,

                              Plaintiff,

              -against-

WILLIAM A. LEE,

                              Defendant.

**ORDER**

14 Civ. 7501 (PGG) (RLE)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Petitioner Sheldon Harris seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On June 25, 2009, a jury convicted Harris of murder in the second degree, attempted murder in the second degree, weapon possession in the second degree, assault in the first degree, and endangering the welfare of a child.  (Petition (Dkt. No. 1) at 1)  Harris claims that (1) the trial court improperly admitted a medical examiner's expert testimony on ballistics in violation of his Fifth and Fourteenth Amendment right to due process; (2) the trial judge's erroneous admission of a 911 call denied him a fair trial; and (3) the prosecutor's summation deprived him of his Fifth and Fourteenth Amendment right to due process.  (See id. at 8-15)

        On October 17, 2014, this Court referred the Petition to Magistrate Judge Ronald Ellis for a Report and Recommendation ("R&R").  (Dkt. No. 5)  On September 15, 2017, Judge Ellis issued an R&R recommending that this Court deny the petition.  (Dkt. No. 23)  For the reasons stated below, this Court will adopt the conclusions of the R&R, and Harris's petition will be denied.

**BACKGROUND**

I.     **FACTUAL BACKGROUND**

    A.     **September 4, 2006 Events**

Harris and Colleen Brown ("Colleen") met in 2000.  In 2004, they had a daughter, who they named Taylor.  Harris and Colleen had a difficult relationship, and in 2006 they broke up.  (Killian Decl. (Dkt. No. 8-11), Attachment ("Att.") 11 at 220-22)[1]  At that time, Colleen was living with her mother, Joan Brown ("Joan").  (Id. at 221)  Joan's mother and Colleen's grandmother, Clarissa Bryant, lived in the basement of the same building.  (Id. at 109)  Joan did not allow Harris to enter her apartment, but he was permitted to visit with Taylor on an adjacent landing.  (Id. at 230)

On September 3, 2006, Harris and Colleen went to dinner to discuss the end of their relationship.  Harris testified that he was distraught at the dinner and told Colleen that he wanted to kill himself.  By contrast, Colleen testified that Harris appeared normal at dinner.  (Id. at 235-26; (Dkt. No. 8-15), Att. 15 at 80)  The following morning, September 4, 2006, Colleen, Joan, Bryant, Taylor, and Marjorie Lawrence – a friend of Joan – were together in Joan's apartment.  (Killian Decl. (Dkt. No. 8-11), Att. 11 at 241)  Harris testified that he visited the apartment to say goodbye to Taylor; Harris planned to then kill himself in front of Colleen. (Killian Decl. (Dkt. No. 8-15), Att. 15 at 81-82)

Colleen told Harris that she had to leave and it was time to end his visit with Taylor.  Harris became upset and grabbed Colleen by the arm.  (Killian Decl. (Dkt. No. 8-11) at 242)  Harris asked Colleen for a kiss, and when she refused, he pulled out a gun and shot her

---

[1]  The page numbers referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

twice.  (Id. at 243, 245-46)  Colleen screamed for Joan and fell down in the doorway of the apartment.  (Id.)  Bryant testified that when Joan went to her daughter, Harris shot Joan in the chest.  (Killian Decl. (Dkt. No. 8-12), Att. 12 at 157)  Bryant then asked Harris why he was doing this, and struggled with Harris to gain control of the gun.  Harris prevailed, and shot Bryant in the leg. (Id. at 158-60, 164, 169)  Harris then knelt by Colleen and said, "You know I love you, why are you breaking up with me?"  He then shot Colleen a third time.  (Id. at 160-61)

Harris testified that he then shot himself three times.  (Killian Decl. (Dkt. No. 8-15), Att. 15 at 93-96)  Although Harris admitted that he had shot Colleen and himself, he denied shooting Joan or Bryant.  (Id. at 98, 101)  Harris testified, however, that he "didn't know what happened to [the bullets] after they exit[ed his] body."  (Id. at 96)

As Joan was dying, she dialed 911 but was unable to speak.  (Killian Decl. (Dkt. No. 8-11), Att. 11 at 137)  Lawrence then called 911.  (Id. at 137-40)  Police officers arrived and took Colleen, Joan, Bryant, and Harris to Jacobi Medical Center.  (Id. at 77-78)  While the paramedics were treating him, Harris confessed to a detective that he had "shot [his] daughter's mother" and had "shot himself."  (Killian Decl. (Dkt. No. 8-15), Att. 15 at 98)  Colleen, Bryant, and Harris survived their gunshot wounds, but Joan died.  (Id. at 101)

B.     **Relevant Trial Proceedings**

Harris's trial began on May 28, 2009, before Justice Lieb in New York State Supreme Court.  (Killian Decl. (Dkt. No. 8-10), Att. 10 at 1)  The prosecution's theory at trial was that Harris had intentionally shot Colleen, Joan, and Bryant because he was "harboring ill will towards everyone in [Joan's] apartment."  (Killian Decl. (Dkt. No. 8-17), Att. 17 at 132)  The defense's theory was that Harris had not intended to shoot Joan or Bryant, and their injuries

resulted from the bullets passing through Harris after he fired the gun into his own stomach.  (Id. at 14)

### 1.   Medical Examiner's Testimony

Dr. Carolyn Kappen, a New York City medical examiner, testified for the prosecution concerning the gunshot wounds suffered by Joan and the surviving victims.  (Killian Decl. (Dkt. No. 8-13), Att. 13 at 46-47)  Dr. Kappen has analyzed and provided opinions regarding gunshot wounds suffered by survivors about "five times."  (Id. at 47)  The defense objected to Dr. Kappen's qualifications, and asked that her testimony be limited to "the autopsy and her findings on Joan Brown, not a [reconstruction] of how the shooting occurred."  (Id.)  The trial judge rejected defense counsel's blanket objection, but instructed the defense to raise objections to specific questions as it deemed necessary.  (Id. at 48)

On direct examination, Dr. Kappen testified that the gunshot wound to Joan's abdomen caused her death, and that Joan's wound was not consistent with a bullet passing through an intermediate target, as the defense had suggested.  (Id. at 51, 75)  She testified that a bullet's entrance wound looks "very different" from a bullet's exit wound.  (Id. at 51)  The defense objected, stating that Dr. Kappen's testimony was "getting into [the] trajectory of [the] bullet," but the court overruled the objection.  (Id. at 58)

Dr. Kappen then testified that she performed an autopsy on Joan in order to "determine the bullet path."  (Id. at 58-59)  Her autopsy of Joan revealed that the bullet perforated her liver, stomach, kidney, and aorta.  (Id. at 58)  Dr. Kappen testified that when a bullet passes through an intermediate target, an autopsy would reveal "more than one hole" or holes that are "irregular looking."  (Id. at 74-75)  She opined that, in Joan's case, there was no intermediate target, because the entrance wound on Joan's body was "pristine" and did not

display the characteristics of a wound caused by a bullet that had passed through an intermediate target. (Id. at 75)  Defense counsel objected to Dr. Kappen's testimony that there had been no intermediate target.  (Id. at 78)  After Dr. Kappen explained that she was "trained to identify injuries and . . .  can tell to a certain degree what did or didn't happen such [as] with this whole intermediate target issue," the court overruled defense counsel's objection, finding that Dr. Kappen was qualified to offer an opinion.  (Id. at 78-79)

The defense called two experts who disputed Dr. Kappen's findings.  Jason Alexander, a forensic expert in "ballistics, gunshot wounds, crime scene analysis, and shooting reconstruction," testified as to the possibility that Harris was an intermediate target for Joan's gunshot wound. (Killian Decl. (Dkt. No. 8-16), Att. 16 at 15, 54-56)  On direct examination, Alexander testified that he had performed a bullet penetration test, shooting through "tissue . . . and bone." (Id. at 56)  Based upon his test, Alexander concluded that "the bullet could go that far, [and] could go through two people easily."  (Id.)  Using a digital reconstruction, Alexander further opined that Joan's fatal wound could have been a result of Harris shooting himself in the stomach. (Id. at 103-04)  Alexander also disputed Dr. Kappen's testimony that it was "impossible" for the bullet to remain stable after passing through Harris's body.  (Id. at 90) Alexander went on to testify that it was likewise possible that a bullet could have passed through Harris and wounded Bryant.  (Id. at 105-106)

The defense also called Dr. Mark Taff, a medical examiner who had been overseeing death investigations for more than two decades.  (Id. at 191-92)  Dr. Taff had investigated hundreds of cases and testified hundreds of times as a forensic pathology expert.  (Id.)  Dr. Taff testified that Joan's wound could have occurred after the bullet had passed through an intermediate object.  (Id. at 204-05)  Dr. Taff also testified that his theory would be easier to

prove if Harris and Joan's clothing had been retained instead of being thrown away.  (Id. at 219-20)

### 2.    The 911 Calls

The defense objected to the prosecution's introduction of Joan and Lawrence's 911 calls.  Accordingly, the trial judge initially listened to the 911 calls outside the presence of the jury, and then heard argument from counsel.  (Killian Decl. (Dkt. No. 8-11), Att. 11 at 95-99) Defense counsel argued that the 911 calls were "extremely" prejudicial, and pointed out that Lawrence would be testifying at trial. (Id. at 97)  The prosecution argued that Lawrence's call was relevant because it demonstrated Joan's "grave condition" and showed Lawrence's state of mind.  (Id. at 98)  The prosecution also argued that Joan's call – in which she was unable to speak due to her gunshot wound – was relevant, because "the same scream" heard during Joan's call is heard during Lawrence's call (id. at 99), thus providing "a reference of time" as events unfolded, including "how fast [Joan] went out of the picture."  (Killian Decl. (Dkt. No. 8-8), Att. 8 at 12-15)

The court overruled defense counsel's objection, finding that the 911 calls were admissible under the present sense impression exception to the hearsay rule, and that the probative value of the 911 calls outweighed their prejudicial effect.  (Killian Decl. (Dkt. No. 8-11), Att. 11 at 99-100)

### 3.    Prosecutor's Summation

Before the summations, Justice Lieb instructed the jury that "nothing the lawyers say in their summations is evidence," and that the summations were "simply argument[s]" that the jury "must disregard" if not based upon evidence.  (Killian Decl. (Dkt. No. 8-16), Att. 16 at 376)

6

The prosecutor began his summation by attacking defense counsel's attempt to blame Colleen for Harris's actions on September 4, 2006.  (Killian Decl. (Dkt. No. 8-17), Att. 17 at 131)  The prosecutor argued that Harris "harbor[ed] ill will towards everyone in [Joan's] apartment," and had not gone to the apartment that day planning to kill only himself:  "[t]hat is not what he wanted . . . he wanted attention."  (Id. at 132, 133)

Defense counsel made twenty-five objections during the prosecutor's summation, generally by simply saying "objection."  (See id. at 134, 137, 139, 143, 144, 147, 148, 149, 152, 153, 156, 158, 160, 161, 163, 164, 167, 168, 169, 170, 172)  In the few instances in which defense counsel said anything other than "objection," the trial judge admonished counsel, saying "enough of the speaking objections, enough."  (Id. at 161)

The trial court overruled many of the objections, stating that the jury's recollection of the evidence would control, or that the jury could evaluate the testimony and related evidence.  (Id. at 134, 137, 143, 149, 152, 153, 156, 158, 160, 161, 167, 172)  For example, Justice Lieb overruled objections to the prosecutor's statements that "Marjorie Lawrence is a shattered woman," and that she "was hiding behind this piece of wall so that she is not going to get hit" by bullets, stating that "the juror's recollections of the evidence will control."  (Id. at 133-34, 149)  Justice Lieb also overruled objections to the prosecutor's assertions that (1) Harris's testimony that he dropped the gun was not "credible" (id. at 151-52); (2) "someone saw [Harris] point the gun" directly at Joan (id. at 156-57); and (3) there was no evidence that Joan struggled for the gun, despite testimony that Lawrence believed that Brown was shot during a struggle amongst Bryant, Joan, and Harris as they attempted to wrestle for control of the gun.  (Id. at 152-53)

The court sustained other objections, such as when the prosecutor (1) suggested that Lawrence did not rush to the sound of the gunshots because she did not have a gun (id. at 147); (2) asserted that Joan's "wound was caused by a direct hit and that is a fact which [the defense] cannot escape" (id. at 160-61); and (3) claimed that if Joan Brown had survived, she would have told the jury that she "will never forget the sound of her daughter" crying out "Mommy, mommy." (Id. at 148)

After summations – but before the jury charge – defense counsel expanded a prior objection to the prosecutor's argument that the alignment of the wounds in Harris and Joan rendered Harris's account of Joan's shooting impossible. (Id. at 177) Defense counsel asked the court to instruct the jury "to completely disregard" the prosecutor's argument, asserting that there was no evidence supporting that argument. (Id. at 177, 179) Justice Lieb denied that request, finding that the prosecutor's comment was "fair" and that "the jurors know they are free to accept or reject conclusions that attorneys ask them to draw from the evidence." (Id. at 182)

### 4.   <u>Verdict and Sentence</u>

On June 26, 2009, the jury convicted Harris of second-degree murder, attempted second-degree murder, first-degree assault, second-degree weapon possession, and endangering the welfare of a child. (Id. at 389, 394-97) On August 25, 2009, the court sentenced Harris to an indeterminate term of twenty-five years to life imprisonment on the murder count, to run consecutively with terms of twenty-two years on each of the attempted murder and assault counts, fifteen years on the weapons count, and one year on the child endangerment count. (Id. at 437-38)

## II.  **PROCEDURAL HISTORY**

In October 2011, Harris filed a timely appeal in the New York Appellate Division, First Department.  (Killian Decl. (Dkt. No. 8-1), Ex. 1)  On appeal, Harris raised the following issues relevant to the instant habeas petition:  (1) the trial court improperly admitted the medical examiner's expert testimony on ballistics, in violation of Harris's Fifth and Fourteenth Amendment right to due process; (2) the prosecutor's summation deprived Harris of his Fifth and Fourteenth Amendment right to due process; and (3) the trial judge erroneously admitted Joan's 911 call, denying Harris a fair trial.  (Id. at 41-46, 56-63)  On October 23, 2012, the Appellate Division unanimously affirmed the judgment of conviction.  People v. Harris, 99 A.D. 3d 608 (1st Dept. 2012).  The New York Court of Appeals denied Harris's application for leave to appeal on June 13, 2013.  People v. Harris, 21 N.Y.3d 1004 (2013).

Harris filed a petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254 on September 11, 2014.  ((Dkt. No. 1) at 5)  The Petition presents three grounds for relief:

> (1)    the trial court improperly admitted the medical examiner's expert testimony on ballistics, in violation of his Fifth and Fourteenth Amendment right to due process;
>
> (2)    the trial court erroneously admitted Joan's 911 call into evidence, denying him a fair trial; and
>
> (3)    the prosecutor's summation deprived him of his Fifth and Fourteenth Amendment right to due process.

(Id. at 8-15)

As to the last point, Harris challenges a number of statements the prosecutor made in summation, each of which was objected to at trial.  (Id. at 13)  Harris complains that the "[p]rosecutor personally interjected himself" into the trial, and improperly (1) characterized

9

Lawrence as a "shattered woman"; (2) posited that Lawrence hid behind a piece of wall to avoid getting shot and froze because she didn't have a gun with her; (3)speculated that if Joan were alive she would "never forget" the sound of her daughter calling out for her; and (4) questioned the credibility of witnesses.  Harris also contends that the prosecutor made improper arguments about the evidence, such as the direct nature of wounds at issue.  (Id. at 11-13)  According to Harris, the "cumulative effect" of the prosecutor's statements denied him a fair trial.  (Id. at 13)

On October 17, 2014, this Court referred Harris's petition to Magistrate Judge Ronald Ellis for an R&R.  (Dkt. No. 5)  On September 15, 2017, Judge Ellis issued an R&R recommending that this Court deny the petition.  (Dkt. No. 23)  Judge Ellis's R&R gave notice that any objections were to be filed within fourteen days from service of the R&R, and that the "failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals."  (Id. at 23)  This Court granted Petitioner's requests for multiple extensions to file his objections.  (See Dkt. Nos. 26, 31, 35)  Petitioner ultimately submitted his objections on January 10, 2018.  (Dkt. No. 37)

## III.   THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In his R & R, Judge Ellis first finds that Harris's petition is timely under 28 U.S.C. § 2244(d)(1)(A).  (R&R (Dkt.No. 23) at 9-10)  Judge Ellis then considers whether any of Harris's claims are procedurally barred, because of unexhausted state remedies or independent and adequate state law grounds for rulings he challenges.  Finally, Judge Ellis addresses the merits of each of Harris's claims, and concludes that none have merit.  Judge Ellis recommends that the Petition be dismissed in its entirety.

### A.     Dr. Kappen's Testimony

Judge Ellis finds that Harris presented his challenge to Dr. Kappen's expert testimony to both the Appellate Division and the New York Court of Appeals, and that accordingly Harris has exhausted his state remedies as to this claim.  (Id. at 13-14)  Judge Ellis also notes that the Appellate Division did not reject this claim on procedural grounds, but instead rejected the claim on the merits.  (Id. at 14)

Judge Ellis then considers Harris's claim regarding Dr. Kappen's testimony on the merits.  Judge Ellis concludes that the admission of Dr. Kappen's expert testimony was within the "discretion of the trial court," and that her testimony was within the scope of her expertise— namely "the effects of gunshots on human tissue and conclusions to be drawn therefrom."  (Id. at 21)  Accordingly, Judge Ellis "finds no violation of state evidence law."  (Id.)  Judge Ellis further rejects Harris's claim that the admission of Dr. Kappen's testimony "deprived him of 'a fair trial,'" finding that Harris's claim does not "assert[ a] violation of 'constitutional proportions.'" (Id. at 21-22)

### B.     Joan's 911 Call

As to Harris's claim that Joan's 911 call was improperly admitted, Judge Ellis notes that Harris's only contention on appeal – regarding Joan's 911 call – was that it was unduly prejudicial and "denied [Harris] a fair trial."  (Id. at 14-15 (citing Killian Decl. (Dkt. No. 8-1) Att. 1, 60-62))  Judge Ellis concludes that this generic denial of a fair trial claim did not "apprise the state court of the constitutional nature of the claim."  (Id. at 14)  Judge Ellis thus concludes that this claim is procedurally barred, because it was not exhausted.  (Id. at 15)

Judge Ellis nonetheless goes on to consider this claim on the merits.  (Id. at 22) Judge Ellis finds that the 911 call falls under the present-sense impression exception to the

hearsay rule, and was "was relevant for corroboration and was not unduly prejudicial" in the context of what was an "emotional" case.  (Id.)  See also Harris, 99 A.D.3d at 608-09.  As such, Judge Ellis "finds no violation of state evidence law."  (R&R (Dkt. No. 23) at 22)  As with Harris's challenge to Dr. Kappen's testimony, Judge Ellis concludes that his claim regarding Joan's 911 call "does not assert a violation of 'constitutional proportions,'" and thus fails on the merits.  (Id.)

> **C.**    **Prosecutor's Summation**

As to Harris's claim that the prosecutor's summation deprived him of a fair trial, Judge Ellis finds that Harris exhausted this claim when he asserted on appeal that his right to "due process . . . as guaranteed by the Fifth and Fourteenth Amendment had been denied by the summation."  (Id. at 15)

Judge Ellis further concludes, however, that the Appellate Division's decision presents a procedural bar to federal court review of Harris's claim.  (Id. at 15-17)  In rejecting Harris's claim regarding the prosecutor's summation, the Appellate Division ruled that his claim was unpreserved, citing People v. Romero, 7 N.Y.3d 911 (2006) (a prosecutor's summation is unreviewable on appeal where the defendant made only unspecified, general objections).  Judge Ellis finds that – to the extent that (1) Harris raised only general objections to the prosecutor's summation at trial, and (2) the Appellate Division denied his appeal on an "independent and adequate state law ground that [was] 'firmly established and regularly followed'" and not subject to the "exorbitant[] appli[cation]" exception – Harris's claim is procedurally barred.  (R&R (Dkt. No. 23) at 15-16)

Judge Ellis then considers whether the prosecutor's summation gave rise to a "fundamental miscarriage of justice" such that – if Harris made a "colorable showing of factual

innocence" – the procedural bar would be defeated.  (Id. at 17 (citing Coleman v. Thompson, 501

U.S. 722, 750 (1991) and Washington v. Otisville, No. 96 Civ. 2729 (SAS), 1997 WL 178616 at

*7 (S.D.N.Y. April 11, 1997))  Judge Ellis concludes that Harris had not made a colorable

showing of actual innocence and therefore his claim is procedurally barred.

      Despite concluding that Harris's claims regarding the prosecutor's summation are

procedurally barred, Judge Ellis goes on to consider Harris's claims on the merits.  Applying the

standard set forth in Blissett v. LeFevre, 924 F.2d 434, 440 (2d Cir. 1991), Judge Ellis concludes

that the prosecutor's comments did not amount to "egregious misconduct" so as to deprive Harris

of a "fair trial" and due process.  (R&R (Dkt. No. 23) at 19-20)

## IV.    HARRIS'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

      Harris raises multiple objections to Judge Ellis's R&R.  First, Harris argues that

the R & R's "rendering of the facts make[s] several determinations . . . unsupported by the

record," particularly as to his state of mind.  (Pet. Objections (Dkt. No. 37) at 3-5)  Harris also

notes inconsistencies in witness testimony, and criticizes the R&R for "credit[ing]" one

"version" over another.  (Id. at 4-5)

      As to the admission of Dr. Kappen's testimony, Harris's repeats his argument that

Dr. Kappen was not qualified to testify about ballistics, but was nonetheless permitted to offer

testimony implicating ballistic flight patterns and bullet stability.  (Id. at 5-9; 12-13)

      As to the admission of Joan's 911 call, Harris repeats his argument that the call

was unduly prejudicial and had no probative value.  (Id. at 5, 7, 13)

      With respect to the prosecutor's summation, "Petitioner asserts that the state

court's invocation of a procedural bar is inadequate to prevent habeas review" where the trial

court "barred speaking/elaborated objections."  (Id. at 9)  Harris further asserts that "the

contemporaneous objection rule is exorbitantly applied when defense counsel was limited to general objection[s] which were in fact made whether sustained or overruled," and where – after closing arguments – "defense counsel requested [a] curative instruction."  (Id. at 9-10)  Harris also challenges Judge Ellis's application of People v. Romero, arguing that Romero has no application where "elaborated/speaking objections are disallowed by the trial court."  (Id. at 10)  Finally, Harris contends that Judge Ellis misapplied the three-part test set forth by the Second Circuit in Blissett, 924 F.2d at 440.  (Id. at 10-12)

## DISCUSSION

I.   **LEGAL STANDARDS**

    A.   **Review of Magistrate Judge's Report and Recommendation**

        In evaluating a magistrate judge's R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party may submit objections to a magistrate judge's R & R.  Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1).

        Where, as here, a party submits timely objections to an R & R, "[the district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3).  "[O]bjections 'must be specific and clearly aimed at particular findings in the magistrate judge's proposal'" in order to invoke de novo review, however.  See McDonaugh v. Astrue, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).  And where "a 'party makes only

conclusory or general objections, or simply reiterates the original arguments,' the court reviews the R & R strictly for clear error." Covington v. Five Points Corr. Facility, No. 11 Civ. 8761 (AT) (FM), 2016 WL 3407845, at *1 (S.D.N.Y. June 16, 2016) (quoting Rivera v. Colvin, No. 11 Civ. 7469, 2014 WL 3732317, at *1 (S.D.N.Y. July 28, 2014)).  A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

The objections of pro se litigants "'are generally accorded leniency,'" Milano v. Astrue, No. 05 Civ. 6527 (KMW) (DCF), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008) (quoting Dixon v. Ragland, No. 03 Civ. 826 (LTS) (KNF), 2007 WL 4116488, at *1 (S.D.N.Y. Nov. 16, 2007)), and "construe[d] . . . to 'raise the strongest arguments that they suggest.'"  Id. (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)).  However, "even a pro se party's objections to [an R & R] must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." Pinkney v. Progressive Home Health Servs., No. 06 Civ. 5023 (LTS) (JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (internal quotations marks omitted); see also Barratt v. Joie, No. 96 Civ. 0324 (LTS) (THK), 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) ("Objections to a Report and Recommendation are to be specific and are to address only those portions of the proposed findings to which the party objects." (internal quotation marks omitted)).

## B.   **Habeas Corpus Review**

Habeas corpus petitions are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), which provides that "[t]he writ may not issue for any claim

adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'"  Epps v. Poole, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

      In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner."  Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).  Moreover, "an unreasonable application is different from an incorrect one."  Bell v. Cone, 535 U.S. 685, 694 (2002); see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").

      Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (internal quotation marks omitted).  "Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'"  Small v. Chappius, No. 12-CV-5583 (KMK)(JCM), 2017 WL 4342132, at *4 (S.D.N.Y. Sept. 28, 2017) (quoting Harrington, 562 U.S. at 102)); see also Cullen v. Pinholster, 563 U.S. 170, 202-03 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice.");

Hawthorne v. Schneiderman, 695 F.3d 192, 197 (2d Cir. 2012) (per curiam) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did – and indeed we are troubled by the outcome we are constrained to reach – we . . . must defer to the determination made by the state court." (internal citation omitted)).

Under the AEDPA, the factual findings of state courts are "presumed to be correct." 28 U.S.C. § 2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). A petitioner can rebut this presumption only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Cotto v. Herbert, 331 F.3d 217, 233 (2d Cir. 2003).

Finally, only federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

## II.    ANALYSIS

### A.    Objections Concerning Factual Determinations

Harris contends that, in "rendering . . . the facts," Judge Ellis "make[s] several determinations . . . unsupported by the record." (Pet. Objections (Dkt. No. 37) at 3) As noted above, Harris challenges Judge Ellis's findings concerning his state of mind and complains that Judge Ellis credits one witness's account over another. (Id. at 3-5) "A federal habeas court cannot second-guess the jury's credibility assessments or weighing of the evidence," however.

Romero v. Napoli, No. 08 CIV. 8380 PAE HBP, 2013 WL 6170636, at *3 (S.D.N.Y. Nov. 25, 2013) (citing Quartararo v. Hanslmaier, 186 F.3d 91, 95, 96 (2d Cir.1999)).  "Such objections do not merit de novo review."  Id.

        Having reviewed the record, this Court finds no error in Judge Ellis's discussion of the evidence at trial.  Accordingly, to the extent that Harris objects to the R&R's factual presentation, the objection is overruled.

      **B.**    **Dr. Kappen's Testimony**

        Harris objects to the R&R's conclusion that the admission of Dr. Kappen's testimony did not violate his constitutional rights.  In his objections, Harris merely repeats his claim that Dr. Kappen was not qualified to testify about ballistics, but was nonetheless permitted to offer testimony implicating ballistic flight patterns and bullet stability.  (Pet. Objections (Dkt. No. 37) at 5-9; 12-13)  Because Harris merely rehashes arguments made to Judge Ellis, this Court reviews for clear error.  See Covington, 2016 WL 3407845, at *1; see Snow, 462 F.3d at 72.

        As an initial matter, this Court agrees with Judge Ellis that "the admissibility and limits of expert testimony lay primarily in the sound discretion of the trial court."  (R&R (Dkt. No. 23) at 21)  Here, the trial judge concluded that Dr. Kappen's testimony about the effect of gunshots on human tissue was within the scope of her expertise.  (Id.)  In admitting her testimony, the trial judge did not violate Harris's constitutional rights.  Accordingly, to the extent that Harris's objections are premised on the admission of Dr. Kappen's testimony, his objections are overruled.

### C.     Joan's 911 Call

Harris also objects to the R&R's findings regarding the admission of Joan's 911 call.  In doing so, Harris merely repeats his claim that Joan's 911 call was unduly prejudicial and of no probative value.  (Pet. Objections (Dkt. No. 37) at 5) 7, 13)  Accordingly, this Court reviews for clear error.

This Court sees no clear error in Judge Ellis's determination that this claim was not exhausted.  (See R&R (Dkt. No. 23) at 14-15, 22)  In any event, Harris's claim that the 911 call was improperly admitted raises "a state evidentiary matter wholly separate from the question of whether the admission of such evidence violates the federal Constitution."  See Sorrentino v. Lavalley, No. 12-CV-7668 (VSB)(DF), 2016 WL 3460418, at *3 (S.D.N.Y. June 21, 2016).  In order to demonstrate that the trial court's admission of Joan's 911 call violated Harris's constitutional rights, he would have to show that the ruling was not only erroneous, but also that the erroneously admitted evidence "was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."  Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985).  Even if Harris could show that the 911 call was improperly admitted, given the overwhelming evidence of Harris's guilt, the admission of the 911 call did not deprive him of a fair trial.  For these reasons, Harris's objections regarding the admission of Joan's 911 call are overruled.

### B.     Prosecutor's Summation

Harris objects to the R&R's conclusion that his claims arising from the prosecutor's summation are procedurally barred.  According to Harris, the procedural bar was "exorbitantly applied," given the trial judge's ruling that defense counsel could not make speaking objections.  (Pet. Objections (Dkt. No. 37) at 9; Killian Decl. (Dkt. No. 8-13), Att. 13 at

90 ("I'm not going to have everybody discussing everything on the record.  I've asked no speaking objections."), 227 ("Please keep your objections to yes or no."); (Dkt. No. 8-17), Att. 17 at 161)

"[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."  Cone v. Bell, 556 U.S. 449, 465 (2009) (citing Coleman, 501 U.S. at 731).  A state court's reliance on a state procedural rule must be "clear from the face of the opinion" in order for it to qualify as an independent state law ground that forecloses federal habeas review.  Coleman, 501 U.S. at 735 (citation omitted).  A "state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state."  Garvey v. Duncan, 485 F.3d 709, 713 (2d Cir. 2007) (quoting Lee v. Kemna, 534 U.S. 362, 376 (2002)).

Here, the New York Appellate Division relied on a procedural rule to deny Harris's "challenges to the prosecutor's summation," finding that his objections were "unpreserved."  In the alternative, the state court denied Harris's claim on the merits.  Harris, 99 A.D. 3d at 609 (citing Romero, 7 N.Y. 3d 911, 912 (2006)).

New York's preservation doctrine is firmly established and regularly followed.  See Garvey, 485 F.3d at 714-15 ("New York courts have explained that to preserve a claim of error . . . a defendant must make his or her position known to the court. . . . A general objection is not sufficient to preserve an issue since such would not alert the court to the defendant's position."); Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996) (a failure to preserve an issue for appeal constitutes an adequate and independent state law ground precluding federal habeas review; "federal habeas review is foreclosed when a state court has expressly relied on a

procedural default as an independent and adequate ground, even where the state court has also

ruled in the alternative on the merits of the federal claim" (quoting Velasquez v. Leonardo, 898

F.2d 7, 9 (2d Cir. 1990))); see also Fernandez v. Leonardo, 931 F.2d 214, 215-16 (2d Cir. 1991).

Even where a state law ground is firmly established and regularly followed,

however, there are "exceptional cases in which exorbitant application of a generally sound rule

renders the state ground inadequate to stop consideration of a federal question." Lee, 534 U.S. at

376. In determining whether a state court's application of a firmly established and regularly

followed state procedural rule is "exorbitant," courts consider the following factors:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and
> whether perfect compliance with the state rule would have changed the trial court's
> decision; (2) whether state caselaw indicated that compliance with the rule was demanded
> in the specific circumstances presented; and (3) whether petitioner had "substantially
> complied" with the rule given "the realities of trial," and, therefore, whether demanding
> perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85). Although

these factors are not dispositive in "determining adequacy," they serve as guidelines "in

evaluating 'the state interest in a procedural rule against the circumstances of a particular case.'"

Garvey, 485 F.3d at 714 (quoting Lee, 534 U.S. at 381).

As to the first factor – whether the trial court relied on the procedural violation –

Judge Ellis concluded that it did not apply, "'because the lack of contemporaneous objection

would not, almost by definition, be mentioned by the trial court.'" (R&R (Dkt. No. 23) at 16

(quoting Cotto, 331 F.3d at 242)) As to second factor, Judge Ellis finds that New York law

requires compliance. (Id.) As to the third factor, Judge Ellis noted that the Second Circuit has

recognized that demanding compliance with the contemporaneous objection rule serves a

legitimate government interest. (Id. (citing Garvey, 485 F.3d at 720 (contemporaneous objection

rule serves the legitimate government interest "of allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error")))

Harris contends that "the contemporaneous objection rule is exorbitantly applied when defense counsel was limited [by the trial court] to general objection[s]" and "requested curative instruction" after summation, such that "[i]t is error under these circumstances to rule that counsel failed to elaborate."  (Pet. Objections (Dkt. No. 37) at 9-10)  Harris further contends that Romero is not applicable, and points instead to People v. Escobar, 79 A.D.3d 469, 469 (1st Dept. 2010), where – as here – the trial court prohibited speaking objections.  (Pet. Objections (Dkt. No. 37) at 10)  The Escobar court found that – notwithstanding the trial court's prohibition of speaking objections – defendant did not preserve his objections where the trial judge "specifically invited counsel to make such a record at the first recess following an objection, and offered to reconsider its rulings and take curative actions where appropriate."  Escobar, 79 A.D.3d at 469.

Even assuming arguendo that the procedural bar was "exorbitantly applied" here, Harris is not entitled to relief.  Where, as here, a defendant alleges prosecutorial misconduct, "[t]he appropriate standard of review . . . is whether the prosecutor engaged in 'egregious misconduct . . . amount[ing] to a denial of constitutional due process.'"  Blissett, 924 F.2d at 440 (quoting Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990)).  "Prosecutorial misconduct denies a defendant due process only when it is 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"  Id. (quoting Greer v. Miller, 483 U.S. 756, 765 (1987)).  "Because 'reversing a criminal conviction for prosecutorial misconduct is a drastic remedy,' even where misconduct is established, this Court will not reverse a conviction unless the misconduct 'caused the defendant substantial prejudice.'"  United States v. Tyree, 279 F. App'x

22

31, 34 (2d Cir. 2008) (first quoting United States v. Valentine, 820 F.2d 565, 570 (2d Cir. 1987),

and then quoting United States v. Rosa, 17 F.3d 1531, 1549 (2d Cir. 1994)).  "In evaluating

whether a prosecutor's [conduct] deprived petitioner of a fundamentally fair trial, it is important

to place the remark in context" and consider "[t]he severity of the misconduct, curative

measures, and the certainty of conviction absent the misconduct. . . ."  Blissett, 924 F.2d at 440

(internal quotation marks, citations, and alterations omitted).

Here, Judge Ellis concludes that the statements in the prosecutor's summation

cited by Harris did not deprive Harris of due process because they were generally not of a severe

nature, were effectively cured by the trial court's sustaining some objections and issuance of

curative instructions, and given that the "physical evidence against Harris was substantial."

(R&R (Dkt. No. 23) at 20)

Without explanation, Harris claims that the prosecutor's "comments were severe

because they went to the heart of the defense."  (Pet. Objections (Dkt. No. 37) at 10)  But many

of the statements challenged by Harris clearly did not go "to the heart of the defense."  For

example, Harris complains about summation remarks regarding Lawrence, stating that they were

an "appeal for sympathy."  (Petition (Dkt. No. 1) at 11)  In any event, the prosecutor was entitled

to respond to the defense theory that Harris accidentally or unintentionally shot Joan and Bryant.

See People v. Jones, 294 A.D.2d 517, 517 (2d Dept. 2002) ("[T]he summation must be examined

in the context of that delivered by opposing counsel, and is proper if it is responsive to arguments

and issues raised by the defense.").

Harris also contends that the trial judge's "instruction [that] the jury's recollection

of the evidence will control was insufficient."  (Pet. Objections (Dkt. No. 37) at 11)  Such an

instruction may, however, be sufficiently curative to address a prosecutor's alleged improper

closing argument.  See United States v. Feliciano, 223 F.3d 102, 124 (2d Cir. 2000) (finding no unfair prejudice from prosecutor's summation where the court instructed that the jury's recollection of the evidence controls).  And here, the trial judge sustained certain of defense counsel's objections, and at one point required the prosecutor to "take back" his remarks. (Killian Decl. (Dkt. No. 8-17), Att. 17 at 177-81).  See Blissett, 924 F.2d at 441 (finding sufficient remediation of improper remarks where "the trial judge responded promptly to the objections, twice instructing the jury to disregard the offending testimony").  Moreover, the fact that the "jury was discriminating in its verdict" – acquitting Harris on some of the charges against him – is "an important factor in finding [an absence of] prejudice."  United States v. Myerson, 18 F.3d 153, 163 (2d Cir. 1994).  Given the curative measures employed by the trial judge and the overwhelming evidence against Harris – who does not deny that "[h]e was at the scene" and that "[h]e fired the fatal shots" (R&R (Dkt. No. 23) at 20) – there is no basis to find that the jury's verdict resulted from improper argument by the prosecutor.

## CONCLUSION

For the reasons stated above, this Court adopts the conclusions set forth in Judge Ellis's Report & Recommendation and dismisses the Petition.  The Clerk of Court is directed to terminate the motion (Dkt. No. 15) and to close this case.  Chambers will mail a copy of this Order to pro se Petitioner.

This Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Dated:  New York, New York
        January 5, 2021

SO ORDERED.

Paul G. Gardephe
United States District Judge